In the Matter of the Probate of the Will of RUSSELL P. YATES, Deceased. MARY N. YATES et al., Appellants-Respondents; CHARLES B. BECHTOLD, as Special Guardian for JAMES C. YATES and JANE L. YATES, et al., Respondents-Appellants.— Decree and order reversed on the law and facts and a new trial granted, without costs of this appeal to any party. Memorandum: In our opinion the record proofs fail to support the jury's findings that decedent lacked testamentary capacity and that the propounded instrument was the result of undue influence. Decedent, aged sixty-five years, died on January 31, 1944, leaving an estate of several hundred thousand dollars. The instrument which has been denied probate is dated December 20, 1943, but, according to the three subscribing witnesses who testified upon the trial, was executed on December 27, 1943. By its terms decedent's wife received a legacy of $5,000, his automobile, household furniture and personal effects, and one third of his real and personal property. His six children shared equally in the residue, some outright and some in trust. The natural objects of his bounty were his wife, to whom he was married on February 17, 1943, and his six children, the issue of three prior marriages. All of the children were of full age except the issue of the third marriage, a girl and a boy aged fourteen and twelve years respectively. According to the testimony of two highly reputable doctors, his attending physicians, one a subscribing witness to the will, and the testimony of a registered nurse and a lawyer, both subscribing witnesses, the testator, although physically very weak, was of sound and disposing mind and memory when he executed the propounded instrument. These physicians further testified that decedent was under medical care from early in 1936 until his death, and that in March, 1943, they determined that the diseases from which he suffered, were incurable. It further appears that the physician who witnessed his will attended him three times a week prior to the execution thereof and much more frequently after that; that codeine was administered to alleviate pain; that transfusions were given to correct a secondary anemia caused by internal bleeding, the last one on December 19th, and that following the transfusions he would show varying degrees of improvement but always clinical improvement, both from the point of view of his general strength and diminution in his drowsiness. A nurse who attended him from 10:00 P.M. to 7:00 A.M. from December 17, 1943, until his death, testified that his acts and conduct were irrational. Decedent's brother testified that he was irrational on December 20th. Thus the jury had before it some evidence tending to support the inference that decedent lacked sufficient mental capacity to make a will. In our opinion, however, such a finding is clearly against the weight of the credible evidence. In view of the obviously fair and natural provisions of the will, the finding that undue influence was exercised upon decedent rests wholly upon suspicion and conjecture. (See *Matter of Henderson*, 253 App. Div. 140.) Had decedent died intestate his estate would have been distributed substantially as provided in the will except as to the relatively small money legacy and the gift of personal effects to the widow. We do not pass upon the question of

allowances. All concur, except Larkin and Love, JJ., who dissent and vote for affirmance. (The portions of the decree appealed from deny probate of a will. The order denies a motion for a new trial.) Present — Taylor, P. J., Harris, McCurn, Larkin and Love, JJ.